MICHAEL, Circuit Judge,
concurring:
I concur in the court’s opinion. I write separately only to explain more fully why I agree with the decision in part IV(A)(3Xb) to overturn the jury verdicts against Sergeant Swope and Corporal Ricker.
The jury held Swope and Ricker liable for the detentions on April 27-28, 1995, on a theory of bystander liability. With one minor exception, I agree with the court’s statement of the relevant legal principles that apply to this theory.[1] I also agree that Swope’s and Ricker’s liability turns on whether the evidence supports the jury’s finding that the two officers knew the plaintiffs were being detained involuntarily. Although I ultimately agree with the conclusion that the evidence was insuffi *213 cient to support this finding, I want to emphasize that this is still a disturbing case.
It is important to remember that, as tried to the jury, this case was not primarily about whether Swope or Ricker knew that particular plaintiffs were being held against their will and without probable cause. Instead, the parties devoted most of their attention to the more basic question of whether the plaintiffs were involuntarily detained. The defendants’ theory at trial was that the various plaintiffs came to the CID (Criminal Investigations Division) station and remained there voluntarily. In contrast, the plaintiffs argued that Prince George’s County police officers rounded them up and detained them against their will without even a semblance of probable cause. The jury resolved this issue in the plaintiffs’ favor, and the evidence was easily sufficient to support that conclusion. In other words, the jury justifiably concluded that Prince George’s County police officers violated the plaintiffs’ Fourth Amendment rights. Because the individual officers who rounded up the plaintiffs and questioned them had been dismissed from the case, the jury did not decide whether those officers were liable. I believe the evidence would have supported a finding of liability against those officers. But that is not the question before us. We are left to decide whether the jury could reasonably pin the responsibility for the unlawful detentions on Swope and Ricker.[2]
Given the jury’s reasonable belief that the plaintiffs’ Fourth Amendment rights were violated by county police officers, the jury had two basic choices. It could have thought either that the officers who illegally detained the plaintiffs were acting as part of a centralized plan directed by the leaders (including Swope and Ricker) of the Novabilski murder investigation or that the officers were essentially rogue cops acting on their own initiative. Neither side argued the rogue cop theory to the jury, and the evidence seemed to point to a centralized plan. Many officers were involved in the roundup, and officers received radio transmissions from CID instructing them to bring in for questioning anyone seen leaving the house at '7211 East Forest Road. J.A. 422-23. There was thus sufficient evidence to support a finding that the officers who rounded up the plaintiffs were acting under orders from CID. Despite this, the jury found in a special interrogatory that Swope, Ricker, and Lieutenant McQuillan did not order that the plaintiffs be brought to CID involuntarily. J.A. 1106. It is fair to conclude from this finding, as the court’s opinion apparently does, that the jury saw the officers who detained the plaintiffs as rogue cops who initially took the plaintiffs into custody with neither the blessing nor the knowledge of their superior officers. Once the case is seen in this light, Swope’s and Ricker’s liability must turn on the difficult question of whether they knew that the plaintiffs were being held involuntarily at CID.
As the court points out, there was no direct evidence that Swope and Ricker knew that the plaintiffs were being detained involuntarily. There was, however, some circumstantial evidence from which the jury apparently inferred that Swope and Ricker must have known about the *214 roundup and simply failed to do anything about it. The court’s opinion fairly summarizes the relevant evidence and concludes that the evidence cannot support the jury’s inference that Ricker and Swope knew the plaintiffs were involuntarily detained. Though I find the question to be an exceptionally close one, I have to agree. As the opinion emphasizes, the evidence supports a finding that Swope and Ricker knew some of the plaintiffs were at the station and that some individuals were being held there against their will, but it “fails to show that Swope and Ricker also knew that these two groups (i.e., the Ap-pellees and the persons being involuntarily detained) were one and the same.” Ante at 204-05. Accordingly, I concur in the court’s treatment of Swope’s and Ricker’s liability for the unlawful detentions on the night of April 27-28,1995.
This is the legally correct result, but the decision in favor of Swope and Ricker should not be allowed to obscure the unsettling facts of this case. Regardless of whether liability could properly be imposed on these officers, it remains true that the jury reasonably concluded that county police officers rounded up and involuntarily detained the plaintiffs in the knowing absence of probable cause. That conclusion ought to be troubling to officials in Prince George’s County and to all who value the protections of the Fourth Amendment.

. The court's opinion says that Swope and Ricker could be liable to an individual plaintiff on a bystander liability theory only if they knew that the individual plaintiff was present at the CID (Criminal Investigations Division) station. Ante at 204. This standard is a bit too strict. The plaintiffs argued, and the jury apparently believed, that various friends and relatives of murder suspect Jeffrey Gilbert were systematically rounded up and detained involuntarily at the CID station without probable cause. If there was sufficient evidence to support a conclusion that Swope and Rick-er knew that a roundup was under way and failed to intervene, I would hold them liable to all the victims of the roundup regardless of whether the two officers knew that each individual victim was present.

. If § 1983 imposed respondeat superior liability on municipalities, the county would be liable for the detentions because the officers responsible were acting under color of law and in the scope of their employment. Cf. Bd. of County Comm’rs of Bryan County v. Brown, 520 U.S. 397, 430-37, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (Breyer, J., dissenting) (suggesting that respondeat superior liability might be the appropriate standard for municipal liability under § 1983).